B. W. COMPANY & another[1] *vs.* STATE TAX COMMISSION.

Suffolk.    January 8, 1976. — April 1, 1976.

Present: REARDON, QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Taxation,* Income tax, Business trust.

A gain on the sale of real estate, realized by a trust with transferable shares in 1971 when it adopted a plan of complete liquidation and distributed all its assets within twelve months of such adoption, was not includible in its gross income for Federal income tax purposes by reason of § 337 (a) of the Internal Revenue Code, and the gain was not includible in its gross income for Massachusetts income tax purposes by reason of the statement in G. L. c. 62, § 2 (*a*), as appearing in St. 1971, c. 555, § 5, that "[g]ross income means federal gross income"; the gain was not taxable to the trust under Massachusetts laws applicable to its taxable year ending January 31, 1972. [20-23]

APPEAL from a decision of the Appellate Tax Board.

*Richard H. Appert,* of New York (*Emanuel G. Demos,* of New York, & *Michael H. Goshko* with him) for the taxpayer & another.

*Thomas Miller,* Assistant Attorney General, for the State Tax Commission.

*Peter B. Benfield* for the trustees of College House Trust & others, amici curiae, submitted a brief.

WILKINS, J.   This case presents the question whether gain realized from the sale of trust assets under a plan of liquidation adopted pursuant to § 337 of the Internal Revenue Code (Code) was taxable to the trust under the Massachusetts income tax laws applicable in 1971 and 1972 to trusts with transferable shares. We hold that such a gain was not so taxable under the law then in effect.

---

[1] The other appellant, Mr. Emmanuel Kurland, is a trustee for the taxpayer's shareholders under the plan of liquidation and is the assignee of all the taxpayer's assets.

In March, 1971, the B. W. Company (taxpayer), then named the Boston Wharf Company, entered into an agreement to sell certain real estate. In April, 1971, the taxpayer adopted a plan of complete liquidation and sold the real estate. All the trust's assets were distributed within one year of the adoption of the plan of liquidation, thereby satisfying all the conditions of § 337 (a) of the Code for the nonrecognition of gain or loss from the sale of assets during that year. The taxpayer seasonably filed a Massachusetts income tax return for its taxable year ended January 31, 1972, treating the gain on the sale of its real estate as subject to tax. It paid the tax on that gain and filed an application for abatement of that tax. The State Tax Commission (commission) denied the application, and, on appeal, the Appellate Tax Board (board) ruled in favor of the commission. The taxpayer appeals from the board's decision and in particular contests the board's denial of requests for rulings which challenged the imposition of tax on the trust's gain from the sale of its real estate.

The taxpayer, as a trust with transferable shares, was subject to the taxes imposed by G. L. c. 62. G. L. c. 62, § 8 (a), as appearing in St. 1971, c. 555, § 5. Under that chapter, the starting point in calculating the taxpayer's taxable income was the taxpayer's gross income. G. L. c. 62, § 2, as appearing in St. 1971, c. 555, § 5. Section 2 (a) of G. L. c. 62 stated that "[g]ross income means federal gross income" with certain additions and deductions which are not relevant here. "Federal gross income" was defined in G. L. c. 62, § 1 (d), as appearing in St. 1971, c. 555, § 5, as "gross income as defined under the [Internal Revenue Code as amended on January 1, 1971]."[2] G. L. c. 62, § 1 (c), as appearing in St. 1971, c. 555, § 5.

Clearly, the taxpayer's unrecognized gain was not includible in its gross income for Federal income tax pur-

---

[2] Statute 1971, c. 555, was approved on July 22, 1971, and by its terms was applicable to taxable years commencing after December 31, 1970. St. 1971, c. 555, § 67. Because we decide in favor of the taxpayer on the question whether its gain was subject to tax, we need not consider the taxpayer's further argument that a tax imposed by this July tax statute on its April gain is unconstitutional.

poses.[3] Gross income is defined in the Code to be "all income from whatever source derived" subject, however, to the introductory phrase: "Except as otherwise provided in this subtitle [the subtitle concerning income tax]." Int. Rev. Code of 1954, § 61. Various sections of the Code imply that unrecognized gains are not part of gross income. See, e.g., Int. Rev. Code of 1954, § 63. The regulations promulgated under the Code expressly state that "[c]ertain realized gains or losses on the sale or exchange of property are not 'recognized', that is, are not included in or deducted from *gross income* at the time the transaction occurs . . ." (emphasis supplied). Treas. Reg. § 1.61-6 (b) (1960). That regulation cites § 337 as one which provides that gain or loss from certain sales or exchanges will not be considered in the calculation of the taxpayer's gross income.

Although the taxpayer's gain clearly was not part of its Federal gross income and literally, therefore, was not part of the taxpayer's Massachusetts gross income, the commission advances several arguments in an attempt to persuade us to rule that the taxpayer's gain was taxable. The commission argues that business trusts have been treated traditionally as individuals and not as corporations for Massachusetts income tax purposes. Obviously § 337 of the Code could not be applied sensibly to an individual. The problem with the commission's argument is that the 1971 act directs only that such a trust be considered to be an individual (and not a corporation) "[i]n determining the Code *deductions* allowable to such . . . trust" (emphasis supplied). G. L. c. 62, § 8 (*a*). If the Legislature had intended to imply that a business trust be treated as an individual for all purposes, this statutory provision would have been unnecessary. This reference to the determination of "deductions" and the absence of a similar provision as to the

---

[3] Section 337 (a) of the Code provides that any gain or loss from the sale of a corporation's property within twelve months after it has adopted a plan of complete liquidation shall not be recognized if, as here, all the other conditions of § 337 are met. For Federal tax purposes, the taxpayer is treated as a corporation. Int. Rev. Code of 1954, § 7701 (a).

determination of gross income are significant. The 1971 act left the determination of gross income to the provisions of the Code. If the Legislature had intended that a trust with transferable shares should be treated as if it were an individual in determining its gross income, it could have said so.[4]

The commission argues that we should reject the literal application of the Federal income tax definition of gross income because otherwise no Massachusetts income tax will be payable on any gain which resulted from the implementation of the taxpayer's plan of liquidation. The commission says that, as a practical matter, § 337 of the Code is intended to permit taxpayers to avoid possible double Federal taxation and that, because no gain is taxable to the trust's shareholders, the Legislature could not have intended to exempt from taxation all gain realized from the sale of the taxpayer's real estate and the liquidation of the taxpayer.

We do not accept the commission's argument that the taxpayer's shareholders could not be subject to tax on any gain from the liquidation of the trust. In 1964, the trustees of the Boston Wharf Company entered into an agreement under G. L. c. 62, § 1, as then amended, with the Commissioner of Corporations and Taxation to be taxed on its income. That agreement meant that the shareholders were not to be taxed on dividends under the law then in effect. G. L. c. 62, §§ 1 (*c*) and (*e*), as amended by St. 1935, c. 489, § 6, and St. 1963, c. 496, respectively. The question whether capital gain on liquidation could have been taxed to the shareholders of such a trust under that law has not been answered by this court. In *Coffman* v. *State Tax Comm'n*, 365 Mass. 337, 341 (1974), we noted, but expressed no opinion on, the "question whether the shareholders were taxable on the capital gain received by them."

---

[4] By St. 1973, c. 723, § 2, G. L. c. 62, § 8 (*a*), was amended to achieve substantially this result for taxable years commencing after December 31, 1972. See St. 1973, c. 723, § 19. Section 8 (*a*) as so amended, states that "[t]he Massachusetts adjusted gross income of such corporate trust shall be redetermined as if it were a resident natural person . . . ."

Under the provisions of G. L. c. 62, as appearing in St. 1971, c. 555 (the income tax provisions applicable at the time of distribution of the trust's assets), the dividend income of a trust with transferable shares may be deductible from a shareholder's adjusted gross income (G. L. c. 62, §§ 3 [*f*] and 8 [*c*], as appearing in St. 1971, c. 555, § 5), but there is no suggestion that any capital gain from the disposition of such shares is not to be taxed as "net capital gain." See G. L. c. 62, § 4 (*a*) (3), as appearing in St. 1971, c. 555, § 5.[5] See also Int. Rev. Code of 1954, § 331 (*a*) (1). If there were a legislative intent that gain from the sale of property by a trust in a § 337 liquidation should be taxed at some level, the statutory language involved here suggests that that tax may be applicable to the shareholder's gain, if any, and not to any gain to the trust.[6]

This case is unlike recent cases where we have recognized a clear legislative purpose in a tax statute and have avoided a literal reading of the statutory language which would have produced a result inconsistent with that purpose. See *State Tax Comm'n* v. *The PoGM Co.,* 369 Mass. 611, 613 (1976); *Industrial Fin. Corp.* v. *State Tax Comm'n,* 367 Mass. 360, 364-367 (1975). If the State income tax law has incorporated Federal income tax provisions, those provisions should be interpreted as they are interpreted for Federal income tax purposes. *Forte Inv. Fund* v. *State Tax Comm'n,* 369 Mass. 786, 788 (1976). We should be reluctant to infer the existence of a State legislative intent which would require us to disregard the

---

[5] We express no opinion on the consequences and continuing effect, if any, of the taxpayer's 1964 agreement with the Commissioner of Corporations and Taxation purporting to exempt from taxation "income from the shares" of the trust. The provisions of G. L. c. 62, § 1, authorizing agreements which exempted dividends from taxation to shareholders of trusts with transferable shares (see St. 1935, c. 489, §§ 6, 7, and St. 1963, c. 496), were repealed by St. 1971, c. 555, § 5.

[6] In its operation, § 337 not only eliminates possible double taxation of such a gain but also may result in the elimination of any income tax liability at any level in certain situations (e.g., where a shareholder is tax exempt or where a shareholder's basis for his shares exceeds the value of the assets distributed to him in liquidation).

meaning established under Federal tax law of unambiguous, common statutory language. *Id.* at 551.

The decision of the Appellate Tax Board is reversed.

*So ordered.*